**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| CONNIE FRENCH,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>MICHAEL J. ASTRUE,<br>Commissioner of the Social<br>Security Administration,<br><br>　　　　　Defendant. | NO. EDCV 09-01489 SS<br><br>**MEMORANDUM DECISION AND ORDER** |

**I.**

**INTRODUCTION**

Connie French ("Plaintiff") brings this action seeking to overturn the decision of the Commissioner of the Social Security Administration (hereinafter the "Commissioner" or the "Agency") denying her application for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). The parties consented, pursuant to 28 U.S.C. § 636(c), to the jurisdiction of the undersigned United States Magistrate Judge. For the reasons stated below, the decision of the Agency is REVERSED and REMANDED for further proceedings.

## II.

## PROCEDURAL HISTORY

On November 1, 2005, Plaintiff filed an application for DIB, (AR 86-90), and SSI. (AR 83-85). She alleged a disability onset date of February 13, 2004, alleging "major depression/pancreat[it]is/mass in breast." (AR 110). The Agency denied her claim on May 18, 2006. (AR 63-67)

Plaintiff filed a request for reconsideration of her claim on June 7, 2006, with the assistance of an attorney. (AR 68). The Agency denied reconsideration on March 16, 2007. (AR 69-74). Plaintiff filed a request for a hearing, (AR 75), which was held before Administrative Law Judge ("ALJ") Thomas J. Gaye on November 17, 2008. (AR 33-58). Plaintiff appeared with counsel and testified. (AR).

On December 23, 2008, the ALJ issued a decision denying benefits. (AR 7-14). Plaintiff sought review of the ALJ's decision before the Appeals Council, which denied her request on June 26, 2009. (AR 1-3). Thus, the ALJ's decision became the final decision of the Agency. Plaintiff commenced the instant action on August 7, 2009.

## III.

## THE FIVE-STEP SEQUENTIAL EVALUATION PROCESS

To qualify for disability benefits, a claimant must demonstrate a medically determinable physical or mental impairment that prevents her

2

from engaging in substantial gainful activity[1] and that is expected to result in death or to last for a continuous period of at least twelve months. Reddick v. Chater, 157 F.3d 715, 721 (9th Cir. 1998) (citing 42 U.S.C. § 423(d)(1)(A)). The impairment must render the claimant incapable of performing the work she previously performed and incapable of performing any other substantial gainful employment that exists in the national economy. Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999) (citing 42 U.S.C. § 423(d)(2)(A)).

To decide if a claimant is entitled to benefits, an ALJ conducts a five-step inquiry. 20 C.F.R. § 416.920. The steps are:

(1) Is the claimant presently engaged in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two.
(2) Is the claimant's impairment severe? If not, the claimant is found not disabled. If so, proceed to step three.
(3) Does the claimant's impairment meet or equal the requirements of any impairment listed at 20 C.F.R. Part 404, Subpart P, Appendix 1? If so, the claimant is found disabled. If not, proceed to step four.
(4) Is the claimant capable of performing h[er] past work? If so, the claimant is found not disabled. If not, proceed to step five.

---

[1] Substantial gainful activity means work that involves doing significant and productive physical or mental duties and is done for pay or profit. 20 C.F.R. § 416.910.

3

|     |     |                                                                 |
| --- | --- | --------------------------------------------------------------- |
| 1   | (5) | Is the claimant able to do any other work?  If not, the         |
| 2   |     | claimant is found disabled.  If so, the claimant is             |
| 3   |     | found not disabled.                                             |

Tackett, 180 F.3d at 1098-99; see also Bustamante v. Massanari, 262 F.3d 949, 953-54 (9th Cir. 2001); 20 C.F.R. § 416.920(b)-(g)(1).

The claimant has the burden of proof at steps one through four, and the Commissioner has the burden of proof at step five. Bustamante, 262 F.3d at 953-54. If, at step four, the claimant meets her burden of establishing an inability to perform the past work, the Commissioner must show that the claimant can perform some other work that exists in "significant numbers" in the national economy, taking into account the claimant's residual functional capacity ("RFC"),[2] age, education and work experience. Tackett, 180 F.3d at 1100; 20 C.F.R. § 416.920(g)(1). The Commissioner may do so by the testimony of a vocational expert or by reference to the Medical-Vocational Guidelines appearing in 20 C.F.R. Part 404, Subpart P, Appendix 2 (commonly known as "the Grids"). Osenbrock v. Apfel, 240 F.3d 1157, 1162 (9th Cir. 2001). When a claimant has both exertional (strength-related) and nonexertional limitations, the Grids are inapplicable and the ALJ must take the testimony of a vocational expert. Moore v. Apfel, 216 F.3d 864, 869 (9th Cir. 2000).

//

//

---

[2] Residual functional capacity is "the most [one] can still do despite [his] limitations" and represents an assessment "based on all the relevant evidence." 20 C.F.R. § 416.945(a).

**IV.**

**THE ALJ'S DECISION**

The ALJ employed the five-step sequential evaluation process and concluded that Plaintiff was not disabled under the Social Security Act. (AR 4-14). At the first step, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the period after 2006. (AR 9). At step two, he found that Plaintiff had the following severe impairments: pancreatitis and asthma. (Id.).

At the third step, the ALJ found that the severe impairments at step two did not meet or medically equal a listed impairment. (AR 11). At step four, the ALJ found that Plaintiff was able to perform the following past relevant work: "an administrative clerk; a medical records clerk, a front office receptionist; and a general clerk." (AR 13). Additionally, the ALJ found that Plaintiff had the following RFC:

> to perform medium work as defined in 20 CFR 404.1567(c) and 416.967(c) except she is able to perform postural activities occasionally, she is precluded from climbing ladder/rope/scaffolds and she is precluded from work that involves fumes, odors, dusts, gases and poor ventilation. Occasionally is defined as occurring from very little up to one-third of the time, or approximately 2 hours in an 8-hour workday.

\\
\\

(AR 11).  Because the ALJ found that Plaintiff could perform past relevant work, he did not proceed to step five.  (AR 13-14).  The ALJ, therefore, concluded that Plaintiff was not disabled and not entitled to benefits.  (Id.).

## V.
## STANDARD OF REVIEW

Under 42 U.S.C. § 405(g), a district court may review the Commissioner's decision to deny benefits.  The court may set aside the Commissioner's decision when the ALJ's findings are based on legal error or are not supported by substantial evidence in the record as a whole. Aukland v. Massanari, 257 F.3d 1033, 1035 (9th Cir. 2001); Smolen v. Chater, 80 F.3d 1273, 1279 (9th Cir. 1996).

"Substantial evidence is more than a scintilla, but less than a preponderance."  Reddick, 157 F.3d at 720.  It is "relevant evidence which a reasonable person might accept as adequate to support a conclusion."  Id.  To determine whether substantial evidence supports a finding, the court must "'consider the record as a whole, weighing both evidence that supports and evidence that detracts from the [Commissioner's] conclusion.'"  Aukland, 257 F.3d at 1035 (quoting Penny v. Sullivan, 2 F.3d 953, 956 (9th Cir. 1993)).  If the evidence can reasonably support either affirming or reversing that conclusion, the court may not substitute its judgment for that of the Commissioner. Reddick, 157 F.3d at 720-21.

**VI.**

**DISCUSSION**

Plaintiff contends the ALJ erred for several reasons: (1) the ALJ failed to articulate specific and legitimate reasons for rejecting a treating physician's opinion, (Memorandum in Support of Plaintiff's Complaint ("Complaint Memo.") at 2-5);[3] (2) the ALJ failed to properly consider medication side effects, (id. at 5-6); and (3) the ALJ erred when he found Plaintiff's mental condition not severe. (Id. at 6-8).

The Court agrees with Plaintiff's first and third claims. As the case must be remanded on these grounds, it is unnecessary for the Court to resolve Plaintiff's second claim. For the reasons discussed below, the Court finds that the ALJ's decision should be reversed and this action remanded for further proceedings.

**A. The ALJ Failed To Provide Specific And Legitimate Reasons For Rejecting The Treating Physician's Opinion**

Plaintiff claims that the ALJ improperly rejected Dr. Gurmit Sekhon's opinion. (Complaint Memo. at 2-5). Plaintiff alleges that the rejection was improper because psychiatric treatment notes in the record support Dr. Sekhon's opinion. (Id. at 4-5). Thus, Plaintiff argues that the ALJ failed to provide specific and legitimate reasons for

---

[3] The Court combines Issues I and II from the Complaint Memo. because they are analytically similar.

7

rejecting the treating physician's opinion. (Id. at 2-5). The Court agrees.

Where the treating doctor's opinion is not contradicted by another doctor, it may be rejected only for "clear and convincing" reasons. Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995) (as amended). Even if the treating physician's opinion is contradicted by another doctor, the ALJ may not reject this opinion without providing specific, legitimate reasons, supported by substantial evidence in the record. Id. The opinions of treating physicians are entitled to special weight because the treating physician is hired to cure and has a better opportunity to know and observe the claimant as an individual. Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989).

Dr. Sekhon treated Plaintiff intermittently from June 14, 2005, through April 28, 2008, for the following mental health problems: depression, anxiety, withdrawn behavior, and thought blocking. (AR 381-90, 402-13). Dr. Sekhon reported a global assessment of functioning ("GAF") score[4] of forty-five on June 14, 2005. (AR 388). Clinician

---

[4] A Global Assessment of Functioning score is the clinician's judgment of the individual's overall level of functioning. It is rated with respect only to psychological, social, and occupational functioning, without regard to impairments in functioning due to physical or environmental limitations. See American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders, 32 (4th ed. 2000) (hereafter, "DSM IV"). A rating of 41-50 on the GAF scale indicates "[s]erious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) OR any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job)." See DSM IV, at 34. While GAF scores are not dispositive in social security cases, they may be considered as a relevant factor. See Howard v. Comm'r of Social Security, 276 F.3d 235,

Catherine Garcia also reported a GAF score of forty-five on June 14, 2006.  (AR 335).  Additionally, Dr. Sekhon listed Plaintiff's medications, including the anti-depressants Effexor and Wellbutrin, from 2005 through 2007.  (AR 382).  Plaintiff also noted that Dr. Sekhon prescribed her Effexor for depression and Trazodone for sleep.  (AR 396).

The ALJ acknowledged Plaintiff's "history of mental health problems," but discounted this medical history because he stated that there were "no longitudinal psychiatric treatment notes" in the record. (AR 10).  The ALJ further noted that Plaintiff "testified that psychiatric medications were somewhat effective and that she has had no psychiatric hospitalization."  (Id.).  The ALJ did not specifically discuss Dr. Sekhon's opinion, but stated that he was crediting a consulting psychiatric evaluation by Dr. Linda Smith.  (Id.).  The ALJ highlighted Dr. Smith's finding that Plaintiff "was not psychiatrically impaired in her ability to work."  (Id.).  Thus, the ALJ concluded that "[Plaintiff's] medically determinable mental impairments of depression and anxiety, considered singly and in combination, [did] not cause more than minimal limitation in [her] ability to perform basic mental work activities and are therefore nonsevere."  (AR 10).

The record, however, contradicts the ALJ's findings.  Indeed, the record contains ample longitudinal psychiatric treatment notes which

---

241 (6th Cir. 2002) ("While a GAF score may be of considerable help to the ALJ in formulating the RFC, it is not essential to the RFC's accuracy.  Thus, the ALJ's failure to reference the GAF score in the RFC, standing alone, does not make the RFC inaccurate.").

support Dr. Sekhon's opinion. For example, Dr. Sekhon and other staff at the Phoenix Clinic supplied treatment notes from a least ten occasions, including June 14, 2005, (AR 382), May 30, 2007, (AR 386), June 27, 2007, (AR 385), August 22, 2007, (AR 384), October 10, 2007, (AR 383), November 30, 2007, (AR 408), January 30, 2008, (AR 404, 407), March 12, 2008, (AR 406), April 28, 2008, (AR 405), and June 13, 2008, (AR 403). Moreover, the treatment notes from November 30, 2007 state that Plaintiff was "depressed, worsened by loss of mother and aunt last year. Panic/anxiety attacks, trouble sleeping - racing thoughts . . . continues [with symptoms] of dep[ression] - [increased] crying, 'not enjoying things,' lack of motivation, [increased] isolation . . . [decreased] energy , sadness, [decreased] interest, stays in bed . . . [symptoms] continue to affect [Plaintiff's] ability to carry out daily activities." (AR 409-10).

Thus, the ALJ's stated reason for discounting Plaintiff's undisputed history of mental health problems, i.e., the absence of longitudinal psychiatric treatment notes, is not a legitimate reason to reject the opinion of treating physician Dr. Sekhon. Remand for further proceedings is appropriate because additional proceedings could remedy defects in the ALJ's decision. See Harman v. Apfel, 211 F.3d 1172, 1180 (9th Cir. 2000); Kail v. Heckler, 722 F.2d 1496, 1498 (9th Cir. 1984). Upon remand, the ALJ must provide specific and legitimate reasons, supported by the record, before rejecting Dr. Sekhon's opinion.

**B.  The ALJ Failed To Properly Assess Plaintiff's Mental Health Impairment At Step Two Of The Evaluation Process**

Plaintiff argues that the ALJ erred by finding her mental impairment non-severe. (Complaint Memo. at 6-8). Specifically, Plaintiff argues that the ALJ failed to consider "the medical evidence presented by the treating sources." (Id. at 7). She further argues that "the ALJ was unable to properly assess the effect of . . . Plaintiff's mental impairments on [her] ability to perform and sustain . . . work." (Id.). The Court agrees.

By its own terms, the evaluation at step two is a de minimis test intended to weed out the most minor of impairments. See Bowen v. Yuckert, 482 U.S. 137, 153-154, 107 S. Ct. 2287, 96 L. Ed. 2d 119 (1987); Edlund v. Massanari, 253 F.3d 1152, 1158 (9th Cir. 2001)(stating that the step two inquiry is a de minimis screening device to dispose of groundless claims)(quoting Smolen, 80 F.3d at 1290). An impairment is not severe only if the evidence establishes "a slight abnormality that has no more than a minimal effect on an individuals ability to work." Smolen, 80 F.3d at 1290 (internal quotations and citations omitted).

The ALJ here applied more than a de minimis test when he determined that Plaintiff's mental impairment was not severe. Moreover, the ALJ failed to follow the Secretary's own regulations governing the evaluation of mental impairments, as described below.

11

Where there is evidence of a mental impairment that allegedly prevents the plaintiff from working, the Agency has supplemented the five-step sequential evaluation process with additional regulations.[5] Maier v. Comm'r of the Soc. Sec. Admin., 154 F.3d 913, 914-15 (9th Cir. 1998)(citing 20 C.F.R. § 416.920a)(per curiam). First, the ALJ must determine the presence or absence of certain medical findings relevant to the plaintiff's ability to work. 20 C.F.R. § 416.920a(b)(1). Second, when the plaintiff establishes these medical findings, the ALJ must rate the degree of functional loss resulting from the impairment by considering four areas of function: (a) activities of daily living; (b) social functioning; (c) concentration, persistence, or pace; and (d) episodes of decompensation. 20 C.F.R. § 416.920a(c)(2)-(4). Third, after rating the degree of loss, the ALJ must determine whether the claimant has a severe mental impairment. 20 C.F.R. § 416.920a(d). Fourth, when a mental impairment is found to be severe, the ALJ must determine if it meets or equals a listing in 20 C.F.R. Part 404, Subpart P, Appendix 1. 20 C.F.R. § 416.920a(d)(2). Finally, if a listing is not met, the ALJ must then assess the plaintiff's RFC, and the ALJ's decision "must incorporate the pertinent findings and conclusions" regarding the plaintiff's mental impairment, including "a specific finding as to the degree of limitation in each of the functional areas described in [§ 416.920a(c)(3)]." 20 C.F.R. § 416.920a(d)(3), (e)(2).

---

[5] These additional steps are intended to assist the ALJ in determining the severity of mental impairments at steps two and three. The mental RFC assessment used at steps four and five of the evaluation process, on the other hand, require a more detailed assessment. Social Security Ruling 96-8P, 1996 WL 374184 at * 4.

1     The regulations describe an impairment as follows:

3     A physical or mental impairment must result from anatomical,
4     physiological, or psychological abnormalities which can be
5     shown by medically acceptable clinical and laboratory
6     diagnostic techniques. A physical or mental impairment must
7     be established by medical evidence consisting of signs,
8     symptoms, and laboratory findings, not only by [a
9     plaintiff's] statements of symptoms.

20 C.F.R. § 416.908; see also Ukolov v. Barnhart, 420 F.3d 1002, 1005 (9th Cir. 2005) (noting that the existence of a medically determinable physical or mental impairment may only be established with objective medical findings) (citing Social Security Ruling 96-4p, 1996 WL 374187 at *1-2).

Here, Plaintiff's medical records from the Phoenix Clinic, primarily from Dr. Sekhon, date back to June 14, 2005. (AR 381-90, 402-13). In his June 14, 2005 Adult Psychiatric Evaluation, Dr. Sekhon assigned Plaintiff a GAF score of forty-five. (AR 388). Also in the Evaluation, Dr. Sekhon found Plaintiff had the following mental health problems: depression, anxiety, withdrawn behavior, and thought blocking. (Id.). On June 14, 2006, Clinician Garcia also assigned Plaintiff a GAF score of forty-five, and diagnosed Plaintiff with "major depressi[on] recurrent, severe with psychotic features." (AR 335). Plaintiff continued to seek treatment, including the psychotropic medication Effexor for depression, at the Phoenix Clinic. (AR 396, 411). An

13

Adult Clinical Assessment dated November 30, 2007, reported that Plaintiff was "depressed, worsened by loss of mother and aunt last year. Panic/anxiety attacks, trouble sleeping - racing thoughts . . . continues [with symptoms] of dep[ression] - [increased] crying, 'not enjoying things,' lack of motivation, [increased] isolation . . . [decreased] energy , sadness, [decreased] interest, stays in bed . . . [symptoms] continue to affect [Plaintiff's] ability to carry out daily activities." (AR 409-10).

In her Disability Report, Plaintiff wrote that her "anxiety, inability to sleep, hot flashes, . . . crying spells, [and] lack of concentration" limit her ability to work. (AR 110). She wrote further that she stopped working because of her mental illness. (Id.). Plaintiff also reported that she sought treatment at the Arrowhead Regional Medical Center, where she was prescribed Wellbutrin for depression. (AR 115).

These objective medical findings indicate that Plaintiff suffered from a mental health impairment. See 20 C.F.R. § 416.927(a)(2) ("Medical opinions . . . that reflect judgments about the nature and severity of [a plaintiff's] impairment(s), including symptoms, diagnosis and prognosis," are evidence that a plaintiff may submit in support of his disability claim). The ALJ, however, failed to follow the Secretary's regulations for evaluating mental impairments. Moreover, although the step-two analysis has been recognized as a de minimis test designed to identify and dismiss only frivolous claims, the ALJ found that Plaintiff's "mental impairments of depression and anxiety . . . do

14

1 not cause more than minimal limitation" based in part on the fact that
2 Plaintiff had not suffered any psychiatric hospitalizations.  (AR 10).
3 A claimant may suffer from a mental impairment without having been
4 hospitalized for that limitation.  Thus, it appears that the ALJ applied
5 more than a de minimis test and his conclusion at step two that
6 Plaintiff does not suffer from a severe mental impairment was error.
7 See 20 C.F.R. § 416.920a(b)(1).

9     Remand for further proceedings is appropriate because additional
10 proceedings could remedy defects in the ALJ's decision.  See Harman, 211
11 F.3d at 1180; Kail, 722 F.2d at 1498.  Upon remand, the ALJ must conduct
12 the supplemental evaluation of mental impairment evidence.  Normally,
13 the ALJ must first determine the presence or absence of certain medical
14 findings relevant to the plaintiff's ability to work.  20 C.F.R. §
15 416.920a(b)(1).  However, this Court has determined that there is
16 objective medical evidence that Plaintiff suffers from a severe mental
17 impairment relevant to her ability to work.  Thus, the ALJ need not
18 address this question.  Accordingly, the ALJ must only complete the
19 remaining inquiries required in the supplemental evaluation of mental
20 impairment evidence.

22 \\
23 \\
24 \\
25 \\
26 \\
27 \\

15

**VII.**

**CONCLUSION**

Consistent with the foregoing, and pursuant to sentence four of 42 U.S.C. § 405(g),[6] IT IS ORDERED that judgment be entered REVERSING the decision of the Commissioner and REMANDING this matter for further proceedings consistent with this decision. IT IS FURTHER ORDERED that the Clerk of the Court serve copies of this Order and the Judgment on counsel for both parties.

DATED: July 15, 2010

_____/S/_____
SUZANNE H. SEGAL
UNITED STATES MAGISTRATE JUDGE

---

[6] This sentence provides: "The [district] court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing."